IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LARRY OLLINS and OMAR SAUNDERS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 03 C 5795 |
| PATRICK O'BRIEN, SUSAN L. SUSSMAN, THE OFFICE OF THE COOK COUNTY STATE'S ATTORNEY, COOK COUNTY, THOMAS LAHM, JOHN McHUGH, JAMES MERCURIO, DAVID NOWAK, JAMES MAURER, HARRY DROCHNER, PAMELA FISH, and THE CITY OF CHICAGO, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| MARCELIA BRADFORD, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 03 C 7175 (related case) |
| PATRICK O'BRIEN, SUSAN L. SUSSMAN, THE OFFICE OF THE COOK COUNTY STATE'S ATTORNEY, COOK COUNTY, THOMAS LAHM, JOHN McHUGH, JAMES MERCURIO, DAVID NOWAK, JAMES MAURER, HARRY DROCHNER, PAMELA FISH, and THE CITY OF CHICAGO, | ) ) ) ) ) ) ) ) ) ) ) | Judge Ronald A. Guzmán |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Marcelia Bradford, Larry Ollins and Omar Saunders have sued Assistant State's

Attorneys Patrick O'Brien and Susan Sussman, the Office of the Cook County State's Attorney,

Cook County, Chicago Police Officers Thomas Lahm, John McHugh, James Mercurio, David

Nowak, James Maurer, and Harry Drochner, Chicago Police Crime Laboratory analyst Pamela Fish and the City of Chicago under 42 U.S.C. § 1983 ("section 1983") for the deprivation of their constitutional rights as guaranteed under the Fourth, Fifth, and Fifteenth Amendments, as well as for malicious prosecution and intentional infliction of emotional distress under state law. Defendants have moved to dismiss the complaint pursuant to the Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth below, the Court grants in part and denies in part Defendants' motion to dismiss.

## FACTS

The following is a brief summary of the facts that led to the instant lawsuits. On October 18, 1986, medical student Lori Roscetti was raped and murdered. (Bradford Compl. ¶ 20.) Plaintiffs Ollins and Saunders were found guilty of the murder and sexual assault of Roscetti. (*Id.* ¶¶ 173, 178.) Plaintiff Bradford pleaded guilty to aggravated kidnapping. (*Id.* ¶ 166.) All three Plaintiffs served time in prison for the crime. (*Id.* ¶¶ 166, 173, 178.) Evidence gained from the initial investigation was subjected to DNA analysis in 2001. (*Id.* ¶ 200.) Analysis of this evidence suggested that none of the original four defendants[1] were involved in the rape or murder of Lori Roscetti. (*Id.* ¶ 207.) The Honorable Dennis Porter vacated the convictions of all four original defendants on December 5, 2001. (*Id.* ¶ 206.) On October 17, 2002, Governor George Ryan pardoned Calvin Ollins, Larry Ollins, Marcelia Bradford and Omar Saunders based on their innocence. (*Id.* ¶ 218.)

The particular facts as to each plaintiff are as follows. The Court addresses each plaintiff

---

[1]A fourth person, Calvin Ollins, was also tried and convicted for the murder of Lori Roscetti. He has not filed suit in this Court. Calvin Ollins, Larry Ollins, Marcelia Bradford and Omar Saunders were known as the "Roscetti Four."

in turn.

On January 24, 1987, Larry Ollins was picked up for questioning and taken to Area Four headquarters. (*Id.* ¶ 67.) During the questioning, Ollins alleges he was forced to strip until completely naked and was chained to a ring on the wall of the interviewing room. (*Id.* ¶ 69.) Plaintiffs claim that during Ollins' interrogation Defendants James Mercurio and Thomas Lahm told Ollins that Anthony Gilty had given a statement to the police inculpating him. (*Id.* ¶ 71.) Plaintiffs allege that Gilty's statement actually provided no inculpatory information. (*Id.*) After Ollins denied involvement in the Roscetti murder, Defendants Mercurio, Lahm, Maurer, McHugh and Drochner took turns punching him and, at one time, pulled a chair out from under him. (*Id.* ¶ 72.) Ollins and his mother, whose consent was required because he was a minor, agreed to provide tissue and hair samples of Ollins to the police. (*Id.* ¶ 73.) Plaintiffs allege that Ollins' blood type did not match that of the rapist. (*Id.* ¶ 80.) They also allege that he was found to be a non-secretor in the ABO test and that Roscetti's rapist was a secretor. (*Id.*) Ollins also alleges he was forced to take a polygraph test, and was told, incorrectly, that he failed the test. (*Id.* ¶ 78.)

On January 28, 1987, Ollins was arrested. (*Id.* ¶ 110.) Around this time, Defendants Mercurio and Lahm secured a search warrant for Ollins' home. (*Id.* ¶ 111.) Ollins' alleges that the police officers collected clothes from Ollins' home and falsely claimed they were "blood soaked." (*Id.*)

Marcelia Bradford was taken into custody on January 27, 1987. (*Id.* ¶ 82.) When Bradford was at the police station he alleges he was taken to a small room where the police instructed him to take off all of his clothes and, was subsequently chained him to a ring on the wall. (*Id.* ¶¶ 84, 85.) While chained to the wall, Defendant Mercurio questioned Bradford about the murder and Bradford alleges he denied any knowledge of the crime and repeatedly stated

"we did not kill her." (*Id.* ¶ 85.) Bradford was punched repeatedly and had a bucket of dirty water poured over his head. (*Id.* ¶¶ 86, 88.) After the beatings, Bradford was told to pack his nose and get dressed. (*Id.* ¶ 89.) He was then taken to another police station for a polygraph test. (*Id.*) He was told, incorrectly, that he failed the test. (*Id.*)

After the polygraph, Bradford was taken back to the original police station, where he was re-chained to the wall. (*Id.* ¶ 90.) He alleges he was left alone for long periods of time, hit over the head with a book and slapped across the face. (*Id.* ¶¶ 91-92.) Bradford claims Defendant Mercurio then came into the room carrying a writing pad which contained the police officers' fabrication of the details of the crime. (*Id.* ¶¶ 94-95.) Bradford alleges he was instructed to read the information and remember it for future use and that he was then hit and punched until he agreed to say whatever the officers wanted. (*Id.* ¶ 95.) After Bradford agreed to offer the contents of the writing pad as a statement, and he was made to read the contents out loud. (*Id.* ¶ 96.)

After Bradford was given time to study the information contained on the writing pad, Mercurio and Nowak returned and requested that Bradford repeat the information contained on the writing pad. (*Id.* ¶ 99.) Afterwards, Mercurio and Nowak instructed him to change some of the details contained in the statement. (*Id.*) The changes implicated Larry Ollins, Calvin Ollins, Omar Saunders and Bradford in the Roscetti murder. (*Id.* ¶ 102.)

After Bradford was given time to practice the statement, the Assistant State's Attorney, Susan Sussman, was brought in. (*Id.* ¶ 106.) Bradford appeared before Sussman beaten and bruised with a cut above his nose. (*Id.* ¶ 107.) Sussman took his statement and signed her name to it. (*Id.*)

On January 19, 1987, the police began publicly stating that a person named Omar was an "offender in this case." (*Id.* ¶ 135.) On February 12, 1987, Omar Saunders turned himself in for

questioning. (*Id.* ¶ 137.) Once at the Area Four police station, Saunders was taken into a small room, was made to strip down to his underpants and was handcuffed to a ring on the wall. (*Id.* ¶ 140.) Saunders was asked to issue a statement that implicated Bradford, Larry Ollins and Calvin Ollins. (*Id.* ¶ 144.) When Saunders refused to issue a statement, he was beaten. (*Id.* ¶ 146.) Saunders never issued a statement. During the interview, Sussman tried to elicit a statement from him stating that "[he] better help himself." (*Id.* ¶ 153.) Saunders was charged with the rape and murder of Lori Roscetti. (*Id.* ¶ 155.)

Plaintiffs allege that Defendant O'Brien: (1) encouraged Defendant police officers to manufacture eyewitness testimony; (2) advised lab technicians Fish and Lenz to alter the results of the tests they had conducted; (3) met with Bradford without his attorney present; (4) required Bradford to fabricate additional details of his confession when he testified as a witness at Larry Ollins' trial; (5) took Bradford to the crime scene and forced Bradford to add details to his confession after that trip; and (6) stated that Bradford's repetition of the confession as a way for Bradford to reduce significantly his time in prison. (*Id.* ¶¶ 156-65.)

Bradford pleaded guilty to the charge of aggravated kidnapping and was sentenced to twelve years in prison. (Bradford Compl. ¶ 166.) As part of his plea, Bradford testified at Larry Ollins' trial. (*Id.* ¶ 168.) Bradford was incarcerated from January 27, 1987 until October 26, 1992. (*Id.* ¶ 166.)

Omar Saunders was tried and on May 10, 1998, a jury found him guilty of murder, two counts of aggravated criminal sexual assault, armed robbery and aggravated kidnapping. (*Id.* ¶ 173.) He was sentenced to imprisonment for his natural life for the murder charge, thirty years for the criminal sexual assault charge and the armed robbery charge and fifteen years for the aggravated kidnapping charge, all to run concurrently. (*Id.*) The appellate court affirmed his conviction on September 30, 1992. (*Id.*) He was incarcerated from February 12, 1987 to

5

December 5, 2001. (Ollins/Saunders Compl. ¶ 213.)

Larry Ollins was tried and on June 17, 1998, he was found guilty of murder, aggravated criminal sexual assault, armed robbery, and aggravated kidnapping. (Bradford Compl. ¶ 178.) He was sentenced to imprisonment for his natural life for the murder charge, consecutive thirty-year sentences for the criminal sexual assault charge and armed robbery charge, and a concurrent fifteen-year sentence for the aggravated kidnapping charge. (*Id.*) He was imprisoned from January 28, 1987 until December 5, 2001. (Ollins/Saunders Compl. ¶ 213.)

In 1998, Plaintiffs filed post-conviction petitions asserting that blood evidence proved their innocence, and the petitions were denied by Judge Dennis Porter. (Ollins/Saunders Compl. ¶¶ 221-22.) In 2001, criminalist Dr. Edward Blake concluded that the semen on the underwear of Lori Roscetti did not come from Bradford, Larry Ollins, Larry Saunders or Calvin Ollins ("the Roscetti Four"). (*Id.* ¶ 225.) After Dr. Blake's report was submitted to the appellate court, the case was remanded to the trial court, and the trial court ordered the release of the evidence from the Roscetti case for DNA testing. (*Id.* ¶ 227.) After the testing, Calvin Ollins, Larry Ollins, Marcelia Bradford and Omar Saunders were excluded as the source of the spermatozoa recovered from a vaginal swab remnant. (*Id.* ¶ 228.) Further testing established there was another spermatozoa source on Lori Roscetti's underwear. (*Id.* ¶ 229.) The Roscetti Four were also excluded as the source of the second spermatozoa sample. (*Id.* ¶ 230.) More testing was conducted on additional semen stains and hairs collected from the crime scene, this testing also excluded any of the Roscetti Four as sources of the evidence. (*Id.* ¶¶ 231-32.)

On December 5, 2001, Judge Porter vacated the convictions of the Roscetti Four. (Bradford Compl. ¶ 233.) After the convictions were vacated, the State's Attorney's Office "*nolle prossed*" all charges against them. (*Id.* ¶ 206.) Larry Ollins, Calvin Ollins and Omar Saunders were immediately released. (Ollins/Saunders Compl. ¶ 233.) Bradford, incarcerated

for another crime, was released after his sentence for that crime was completed. (*Id.*) On February 4, 2002, police arrested two men for the murder of Lori Roscetti. (*Id.* ¶ 240.) The men provided tissue samples which matched those recovered at the scene of the crime and eventually confessed to the rape and murder. (*Id.* ¶ 241.)

On October 17, 2002, Governor George Ryan pardoned Calvin Ollins, Larry Ollins, Marcelia Bradford and Omar Saunders based on their actual innocence. (*Id.* ¶ 245.)

## PROCEDURAL HISTORY

### A.     Complaints Filed in the Circuit Court of Cook County

On January 18, 2002, Calvin Ollins, Larry Ollins, Marcelia Bradford and Omar Saunders filed a complaint in the Circuit Court of Cook County. The complaint, filed against Patrick O'Brien, the Office of the Cook County State's Attorney's Office, Thomas Lamb [sic], John McHugh, James Mercurio, David Nowak, Pamela Fish, Raymond Lenz, James Maurer and the City of Chicago, sought recovery under several different state law theories. (Fish's Mot. Dismiss, Ex. A.) On April 8, 2002, the state-court plaintiffs voluntarily dismissed the complaints of Pamela Fish, Raymond Lenz and James Maurer. (*Id.*, Ex. B.) On May 16, 2002, the state-court plaintiffs voluntarily dismissed Patrick O'Brien and the Office of the Cook County State's Attorney. (State's Attys.' Mot. Dismiss, Ex. A.)

On May 12, 2003, Larry Ollins and Omar Saunders filed a first amended complaint in state court. (Fish's Mot. Dismiss, Ex. C.) When filing this complaint, Ollins and Saunders also filed a motion to reinstate Defendants O'Brien, the Office of the Cook County State's Attorney, Fish and Lenz. (State's Attys.' Mot. Dismiss, Ex. D.) This complaint, filed against the same defendants as the original action, also sought recovery under only state-law tort theories. (*Id.*) On August 15, 2003, Ollins and Saunders voluntarily dismissed the first amended complaint.

7

(Fish's Mot. Dismiss, Ex. D.)

On May 12, 2003, Bradford also filed a first amended complaint. (State's Attys.' Mot. Dismiss, Ex. E.) Bradford's complaint differed from Ollins and Saunders' because while he maintained state-law tort claims, he also added section 1983 claims, which alleged due process and equal protection violations, excessive force, false arrest, improper imprisonment and seizure, and conspiracy to violate his due process rights. (*Id.*) On October 28, 2003, Bradford voluntarily dismissed this complaint. (*Id.*, Ex. C.)

### B.      Instant Complaints

Bradford's instant twelve-count complaint alleges both section 1983 claims and state law tort claims. His section 1983 claims are as follows: Count I alleges due process violations of his right to a fair trial by the police officers; Count II alleges due process violations of his right to a fair trial by Fish; Count III alleges a due process violation by the prosecutors for failing to disclose exculpatory evidence; Count IV alleges prosecutorial misconduct; Count V alleges a *Monell* claim against the City of Chicago; Count VI, alleges a conspiracy between all defendants to deprive him of due process; Counts X and XI allege false arrest and use of excessive force with regard to defendants Mercurio, McHugh and Nowak; and Count XII alleges that Mercurio, McHugh, Lahm, Nowak, Sussman and O'Brien coerced his confession. Bradford sues all Defendants, except Sussman and O'Brien, in their individual and official capacities. He sues Sussman and O'Brien in their individual capacities only.

Bradford's state law claims are as follows: Count VII alleges malicious prosecution; Count VIII alleges intentional infliction of emotional distress as to O'Brien, Sussman, Lahm, McHugh, Mercurio, Nowak, Fish and Drochner; and Count XI alleges the liability of the Office of the Cook County State's Attorney and the City of Chicago under *respondeat superior*.

8

Ollins and Saunders' complaint alleges facts and claims very similar to Bradford's. Their complaint reads as follows: Counts I (filed by Ollins) and II (filed by Saunders) allege that the police officers violated their right to due process; Counts III (Ollins) and IV (Saunders) allege that Fish violated their right to due process by depriving them of a fair trial; Counts V (Ollins) and VI (Saunders) allege that the prosecutors violated their due process right by failing to disclose exculpatory evidence; Count VII (Ollins and Saunders) alleges prosecutorial misconduct; Count VIII (Ollins and Saunders) alleges a *Monell* claim against the City of Chicago; and Count IX (both Ollins and Saunders) alleges that all defendants conspired to deprive them of due process. It appears that Ollins and Saunders have sued the individual defendants in both their individual and official capacities.

Ollins and Saunders' state law claims are as follows: Counts X and XI allege O'Brien, Lahm, McHugh, Mercurio, Nowak, Fish and Drochner maliciously prosecuted them; Count VII alleges Defendants are liable for intentional infliction of emotional distress; and Count XII alleges that the Office of the Cook County State's Attorney and the City of Chicago are liable for the acts of their employees based on *respondeat superior*.

## C. Defendants' Motions to Dismiss

Before the Court are three motions to dismiss: one is filed by Pamela Fish, another by Assistant State's Attorneys Patrick O'Brien and Susan Sussman in conjunction with the Cook County State's Attorney's Office and Cook County, and a third by the City of Chicago and Police Officers Thomas Lahm, John McHugh, James Mercurio, David Nowak, James Maurer, Harry Drochner.

Defendant Police Officers Lahm, McHugh, Mercurio, Nowak, Maurer and Drochner, as well as Defendant Fish, argue as follows: (1) Plaintiffs have pleaded themselves out of court as

to both the federal due process claims and their state law malicious prosecution claims; (2) Plaintiffs' conspiracy claims regarding due process rights must be dismissed as police officers did not violate their due process rights; (3) Plaintiffs' intentional infliction of emotional distress claims should be dismissed because they are time-barred under the Tort Immunity Act; and (4) Bradford may not make a due process claim based on concealment of information relating to his innocence because he never had a trial.

Police Officer Defendants further argue that: (1) Drochner should be dismissed because Ollins and Saunders make no allegations against him; (2) Plaintiffs' claims regarding false arrest, excessive force and coerced confessions are time-barred; (3) Plaintiffs' claims against Maurer and Drochner are time-barred, both under the borrowed statute of limitations for section 1983 and the Tort Immunity Act; and (4) Bradford does not have standing to sue Maurer and Drochner because their alleged misconduct was directed solely at the other plaintiffs and Calvin Ollins. Additionally, the City of Chicago argues that the section 1983 conspiracy claim against it must be dismissed because its employees did not violate Plaintiffs' constitutional rights.

Defendants O'Brien, the Cook County State's Attorney's Office and Fish argue that Plaintiffs' complaints are an impermissible third filing under 735 ILL. COMP. STAT. 5/13-217. Defendants O'Brien and Sussman argue that they are protected against suit in their official capacities by the Eleventh Amendment and that they are absolutely immune from suit because of prosecutorial immunity. O'Brien also argues that this Court lacks subject matter jurisdiction over him with regard to the state law claims. O'Brien, Sussman and the Office of the Cook County State's Attorney further argue that Bradford's section 1983 claims based on coerced confession, conspiracy and *Brady* fail as a matter of law. The Office of the Cook County State's Attorney argues that Plaintiffs' *respondeat superior* claims fail because the County has a duty to indemnify state officials against such claims. Cook County argues that the conspiracy claim

10

against it may not go forward because it has no liability for the actions of an Assistant State's Attorney.

## DISCUSSION

A claim may be dismissed under Rule 12(b)(6) only if the nonmoving party can prove no set of facts consistent with its complaint that would entitle it to relief. *N. Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995). In ruling on a motion to dismiss for failure to state a claim, all well-pleaded facts are taken as true, and the only facts available to the court are those presented in the complaint. *Coates v. Ill. St. Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir. 1977). All reasonable inferences are drawn in favor of the nonmoving party. *N. Trust Co.*, 69 F.3d at 129.

### I. Illinois' Savings Provision

For the purposes of a section 1983 cause of action, federal courts adopt the forum state's statute of limitations for personal injury claims. *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001). The statute of limitations for personal injury claims in Illinois is two years. 735 ILL. COMP. STAT. 5/13-202. When borrowing the state statutes the federal courts are "relying on the State's wisdom in setting a limit, and exceptions thereto." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 464 (1975). Typically, state tolling and savings provisions are borrowed along with the statute of limitations because "the chronological length of the limitation period is interrelated with provisions regarding tolling, revival and questions of application." *Id.* However, tolling and savings provisions may not be applied if they are inconsistent with federal law. *Robertson v. Wegmann*, 436 U.S. 584, 588 (1978).

735 ILL. COMP. STAT. 5/13-217 ("section 13-217") is a savings clause which allows plaintiffs an extra year to file against a defendant previously voluntarily dismissed, even if the

11

statute of limitations has expired. 735 ILL. COMP. STAT. 5/13-217. It provides in relevant part:

> Reversal or Dismissal. In the actions specified in Article XIII of
> this Act or any other act or contract where the time for
> commencing an action is limited, *if* judgment is entered for the
> plaintiff but reversed on appeal, or if there is a verdict in favor of
> the plaintiffs and, upon motion in arrest of judgment, the judgment
> is entered against the plaintiffs, or *the action is voluntarily
> dismissed by the plaintiff*, or the action is dismissed for want of
> prosecution, or the action is dismissed by a United States District
> Court for lack of jurisdiction, *then, whether or not the time
> limitation for bringing such action expires during the pendency of
> such action, the plaintiff, his or her heirs, executors or
> administrators may commence a new action within one year or
> within the remaining period of limitation, whichever is greater*,
> after such judgment is reversed or entered against the plaintiff, or
> *after the action is voluntarily dismissed by the plaintiff*, or the
> action is dismissed for want of prosecution, or the action is
> dismissed by a United States District Court for lack of jurisdiction.

735 ILL. COMP. STAT. 5/13-217 (emphasis added).[2] If two causes of action are "premised upon

the identical core of operative facts," then they constitute the same cause of action for purposes

of this savings provision. *Phillips v. Elrod*, 478 N.E.2d 1078, 1081 (Ill. App. Ct. 1985); *see

Walicek v. Ciba-Geigy Corp.*, 508 N.E.2d 246, 247 (Ill. App. Ct. 1987). The Supreme Court of

Illinois has held that section 13-217 allows for one, *and only one*, refiling after a complaint is

voluntarily dismissed, even if the statute of limitations has not yet expired. *Flesner v. Youngs

Dev. Co.*, 582 N.E.2d 720, 721 (Ill. 1991).

Defendants O'Brien, the Office of the Cook County State's Attorney and Fish argue that

the claims against them must be dismissed as an impermissible third filing under section 13-217.

Plaintiffs argue that section 13-217 should not be borrowed because federal courts should not

---

[2]This section was amended in 1995 by P.A. 89-7 § 15 (eff. Mar. 9, 1995). However, the
Illinois Supreme Court held the amended statute unconstitutional in *Best v. Taylor Mach. Works*,
689 N.E.2d 1057, 1104 (Ill. 1997). *Evans v. Lederle Labs.*, 167 F.3d 1106, 1110 n.5 (7th Cir.
1999).

apply tolling and savings provisions to section 1983 too rigorously. Additionally, they argue

that by dismissing only two of the defendants from the first suit, they did not dismiss the entire

*suit*, and thus, they did not run afoul of section 13-217. This Court, for the reasons discussed

below, does not find Plaintiffs' arguments persuasive.

In support of their argument that the Court should not borrow Illinois' savings provision

because to do so would be inconsistent with section 1983, Plaintiffs rely on *Occidental Life*

*Insurance Co. v. E.E.O.C.*, 432 U.S. 355, 367 (1977). In *Occidental Life*, the Supreme Court

held that despite the lack of a statute of limitations in the Equal Employment Opportunity Act of

1972, EEC enforcement actions are not subject to state statutes of limitations. *Id.* at 373. First,

the Court explained that "[i]n view of the federal policy requiring employment discrimination

claims to be investigated by the EEC and, whenever possible, administratively resolved before

suit is brought in a federal court, it is hardly appropriate to rely on the 'State's wisdom in setting

a limit . . . on the prosecution . . . .'" *Id.* at 368 (quoting *Johnson v. Ry. Express Agency*, 421

U.S. 454, 465 (1975)). Second, the Court further explained that "even in cases involving no

inevitable and direct conflict with the express time periods provided in the Act, absorption of

state limitations would be inconsistent with the congressional intent underlying the enactment of

the 1972 amendments," *id.* at 369, which was "to establish an integrated, multistep enforcement

procedure culminating in the EEC's authority to bring a civil action in a federal court," *id.* at

359.

The Court finds *Occidental* distinguishable. With regard to employment discrimination

claims, Congress empowered a federal agency to investigate, conciliate, and litigate claims and,

due to the EEC's severe backlog (of which Congress was clearly aware when enacting the Equal

Employment Opportunity Act of 1972), such power would be eviscerated by the application of

state statutes of limitations. *See id.* at 359-69. In contrast, with regard to section 1983, Plaintiffs

do not present, and we cannot find, any indication that applying the savings provision would be inconsistent with the congressional intent underlying section 1983. *Cf. Robertson*, 436 U.S. at 590 ("Despite the broad sweep of § 1983, we can find nothing in the statute or its underlying policies to indicate that a state law causing abatement of a particular action should invariably be ignored in favor of a rule of absolute survivorship.")

Further, courts in this district have applied the savings provision of section 13-217 to section 1983 claims. *Flores v. City of Chi.*, 682 F. Supp. 950, 952 (N.D. Ill. 1998) (applying the one-year extension to allow plaintiff's suit to be timely filed); *Ill. v. Roland*, 812 F. Supp. 855, 859 (N.D. Ill. 1993) (holding section 13-217's one-year grace period applied to plaintiff's suit in federal court). If this Court applies section 13-217 when it favors the plaintiff, it must also apply it when it causes the plaintiff to lose his cause of action. *See Robertson*, 436 U.S. at 593 (noting state law will not be deemed "inconsistent" with federal law merely because the statute will bar the plaintiff's claims). Moreover, the Seventh Circuit has applied the one refiling rule to actions brought under the National Childhood Vaccine Injury Act, holding that the one refiling rule is a crucial part of the savings statute. *Evans*, 167 F.3d at 1110 ("the one-refiling rule operates as an integral part of the saving statute which courts have characterized as a rule of limitation").

In addition, Plaintiffs argue that because they dismissed only some defendants from their state action, as opposed to the entire cause of action, section 13-217's one refiling rule does not come into play. However, because a statute of limitations is a personal defense as to each defendant, this argument fails. *See Hodgson v. Lodge 851, Int'l Ass'n of Machinists & Aerospace Workers*, 454 F.2d 545, 553 (7th Cir. 1971).

With regard to Defendant Fish, Plaintiffs also argue that because the two first amended complaints filed against Fish in state court were untimely, she cannot now claim that this complaint is a third filing against her. However, the filing of a claim beyond the statute of

14

limitations does not, in and of itself, make such a filing a nullity. Further, adopting Plaintiffs' argument would require us to insert the term "meritorious" before the term "action" twice in the language of section 13-217. This Court is unwilling to rewrite the Illinois savings provision without clear indication from Illinois' highest court that it is appropriate to do so. Thus, the Court finds it irrelevant for the purposes of section 13-217 that the state court complaints against Fish were filed outside of the applicable statute of limitations and holds that the instant complaint is now the third action against her.

In sum, the instant Complaints are impermissible third filings against Defendant O'Brien, the Office of the Cook County State's Attorney and Defendant Fish. Therefore, their motions to dismiss are granted and all claims against them are dismissed.[3] Accordingly, the remainder of this opinion addresses the arguments of the remaining Defendants: Sussman, Cook County, the City of Chicago and the Police Officer Defendants.

## II.    Immunity as to Sussman

First, Sussman argues that the Eleventh Amendment bars a suit against her in her official capacity. However, Bradford has sued Assistant State's Attorney Susan Sussman in her individual capacity only. (Bradford Compl. ¶ 18.) Although the allegations in Ollins and Saunders' Complaint could be construed to sue Sussman in both her individual and official capacities, (Ollins/Saunders Compl. ¶¶ 18-19), they assert in response to the motions to dismiss that they have only sued her in her individual capacity, (Pls.' Resp. Br. at 9). Suits against state officials in their individual capacity are not barred by the Eleventh Amendment. *Scott v.*

---

[3] It appears from the record that Maurer has been dismissed twice by the Plaintiffs. However, the Court need not address this argument because Maurer failed to raise it.

*O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992). Thus, the Eleventh Amendment presents no impediment to Plaintiffs' suits against Sussman in her individual capacity.

Sussman further argues that she should be afforded absolute prosecutorial immunity. Absolute immunity is awarded to government officials whose duties are akin to those who had absolute immunity under common law. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Absolute immunity is given to prosecutors when their conduct is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). However, when prosecutors are engaged in administrative or investigative work, they are not entitled to absolute immunity. *Burns v. Reed*, 500 U.S. 478, 492-96 (1991).

There is a balancing that must take place when determining if an assertion of immunity is sufficient to dismiss a complaint under Rule 12(b)(6). *Stein v. Forest Preserve Dist.*, 829 F. Supp. 251, 257 (N.D. Ill. 1993). Immunity is "the ability to be free from suit, not merely a defense from liability" and should be considered at the earliest possible stage of litigation. *Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000); *see Landstrom v. Ill. Dep't of Children & Family Servs.*, 892 F.2d 670, 674 (7th Cir. 1990). However, immunity is an affirmative defense, *Gomez v. Toledo*, 446 U.S. 635, 640 (1980), and notice pleading does not require plaintiffs to anticipate defenses in their pleadings, *Jacobs*, 215 F.3d at 765 n.3. Thus, to dispose of the issue based solely on a plaintiff's complaint would essentially create a heightened pleading standard requiring plaintiffs to attempt to defeat an immunity defense in their pleadings. *Id.*

Sussman relies on *Hunt v. Jaglowski*, 926 F.2d 689, 690 (7th Cir. 1991), to establish that her actions in the interrogation rooms did not involve investigative or administrative work. However, the *Hunt* court determined the applicability of absolute prosecutorial immunity on a directed verdict, and thus that court had the substance of Hunt's case in chief, which included his

own testimony, on which to base its decision regarding the role of the prosecutor. *Id.*

In contrast to *Hunt*, the instant case is merely at the complaint stage. Viewing the alleged facts and all reasonable inferences drawn therefrom in the light most favorable to Plaintiffs, their complaints suggest that Sussman engaged in investigative or administrative work, and accordingly, the immunity defense does not bar their claims against her at this point. (Bradford Compl. ¶¶ 107-09; Ollins/Saunders Compl. ¶¶ 178-80.) Therefore, the Court denies Sussman's motion to dismiss based on absolute prosecutorial immunity.

## III.    Due Process

Defendants argue that Plaintiffs have failed to state a claim with regard to the alleged due process violations. Defendants are correct in stating that police officers are normally not held liable for failing to disclose exculpatory information under *Brady v. Maryland*, 373 U.S. 83, 89-90 (1963). There are exceptions to that general rule, however. When police officers do not disclose to the prosecutor that they have fabricated inculpatory evidence or have concealed exculpatory evidence, such conduct constitutes a due process violation. *Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001).

Plaintiffs Saunders and Ollins allege that Defendants Mercurio, Lahm, Maurer, Nowak, McHugh and Drochner withheld exculpatory evidence regarding, among other things, the coerced false confessions of Bradford and Calvin Ollins, the coerced testimony of trial witnesses and the blood and semen test results. (Ollins/Saunders Compl. ¶¶ 247, 250.) Bradford alleges Defendant Mercurio and Lahm concealed from the prosecutors exculpatory information regarding his own confession and the blood and semen test results. (Bradford Compl. ¶ 220(e), (f).)

Defendants argue that Plaintiffs have pleaded themselves out of court because their

17

allegations imply that the prosecutors were aware of the exculpatory evidence. The *Newsome* court suggested that when prosecutors are aware that the police fabricated or concealed evidence, the link of causation connecting the police officers to the plaintiff's injury may be broken. *Newsome*, 256 F.3d at 752. However, *Newsome* was decided on a motion for summary judgment, *id.* at 749, and the instant case is merely at the pleading stage.

At the pleading stage, plaintiffs are allowed to plead in the alternative, even if this creates inconsistencies. *Alper v. Altheimer & Gray*, 257 F.3d 680, 687 (7th Cir. 2001). Plaintiffs may plead inconsistent facts, as well as legal theories, as long as plaintiffs are "legitimately in doubt about the facts in question." *Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996). .

Plaintiffs' allegations that the police officers withheld some exculpatory information from the prosecutors, regardless of other allegations that prosecutors knew of some of the exculpatory evidence, is sufficient to withstand a motion to dismiss. This is especially true in light of the distinct probability that Plaintiffs are legitimately in doubt as to whether or not the prosecutors knew of the exculpatory evidence because such information is peculiarly in the hands of the police officers and prosecutors. Therefore, the Court denies Defendants' motion to dismiss Plaintiffs' *Brady* and *Newsome* claims on this basis.

Defendants also argue that Plaintiffs' claims based on these defendants' failure to disclose each plaintiff's own false confession does not state a *Brady* violation. In *Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003), the court held that the detectives' allegedly false account of an arrestee's interrogation was not a violation of *Brady* because the arrestee knew what he had said at the interrogation and thus "the duty to disclose falls out." This Court, adhering to *Gauger*, holds that to the limited extent each plaintiff in the instant case bases his *Brady* claim on the false account of his own interrogation, he fails to state a claim.

However, Plaintiffs Saunders and Ollins also allege that Mercurio, Lahm, Maurer, Nowak, McHugh and Drochner and Sussman withheld exculpatory evidence regarding the coerced false confessions of Bradford and Calvin Ollins, the coerced testimony of trial witnesses, the blood and semen test results, and other fabricated evidence. (Ollins/Saunders Compl. ¶¶ 247, 250.) Bradford also alleges that Mercurio and Lahm concealed exculpatory information regarding the blood and semen test results from the prosecutors and it is reasonable to infer from his allegations that he complains of their false account of confessions of Saunders and Ollins as well.[4] (Bradford Compl. ¶ 220(e), (f).) To the extent that each plaintiff's *Brady* claim rests on allegations other than the false account of his own confession, the Court denies Defendants' motion to dismiss.

Defendants also argue that Bradford may not make a due process claim because his case never went to trial. The Court disagrees.

"When a defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees." *United States v. Ruiz*, 536 U.S. 622, 628 (2002). However, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' . . . ." *Id.* at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).

The Seventh Circuit has not yet decided whether the Constitution requires the government to disclose information of factual innocence prior to a guilty plea. However, in *McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003), it opined in *dicta* that: "it is highly

---

[4]In addition, contrary to arguments otherwise, Bradford has standing to sue Police Officer Defendants Maurer, Drochner, and Lahm with regard to their conduct in furthering the conspiracy among all Defendants to deprive Bradford of his constitutional rights, an alleged conspiracy which involved their failed attempts to coerce Ollins and Saunders to implicate Bradford and an agreement to fail to disclose any exculpatory evidence to Ollins, Saunders, and Bradford and the prosecutors.

likely that the Supreme Court would find a violation of the Due Process Clause if prosecutors or other relevant government actors have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters into a guilty plea." *Id.* In support, the *McCann* court cited *United States v. Ruiz*, 536 U.S. at 631. *Id.* In *Ruiz*, the Supreme Court held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." 536 U.S. at 633. The *Ruiz* Court reasoned that impeachment evidence "is more closely related to the *fairness* of a trial than to the *voluntariness* of the plea" and that "[i]t is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant." *Id.* at 629-30. Based on the *Ruiz* Court's distinction between disclosure of impeachment information as opposed to exculpatory evidence of factual innocence, the *McMann* court surmised that the Supreme Court would likely have reached a different result in *Ruiz* if the information withheld had related to factual innocence. *McCann*, 337 F.3d at 788.

The circumstances in the hypothetical advanced by the court in *McCann* closely resemble the misconduct alleged in this case. Here, Bradford alleges the government and other relevant government actors had knowledge of Plaintiffs' factual innocence and failed to disclose it prior to his plea. Specifically, Bradford alleges the police officers and/or prosecutors concocted the details of the crimes, falsely stated that others had made statements implicating Bradford in Roscetti's rape and murder and failed to disclose the blood and semen test results. The Court finds the *Ruiz* distinction and *McCann dicta* persuasive and holds that due process requires the disclosure of information of factual innocence during the plea bargaining process. For these reasons, the Court denies Defendants' motions to dismiss Plaintiffs' due process claims.

20

## IV. Fourth Amendment

Defendants argue that Plaintiffs' Fourth Amendment claims are time-barred. The Court disagrees.

"A constitutional claim that if vindicated would undermine a state conviction cannot be filed until the conviction is nullified . . . ." *Gauger*, 349 F.3d at 360 (citing *Heck v. Humphrey*, 512 U.S. 477, 486-88 (1994)). The general rule is that "a false arrest is not a defense to criminal charges . . . . [b]ut . . . not in every case." *Id.* at 360-61. "[S]ometimes a successful challenge to a false arrest can indeed impugn the validity of the plaintiff's conviction." *Id.* at 361. Thus, there is no hard and fast rule that the statute of limitations with regard to false arrest and other claims under the Fourth Amendment begins to run when the violations occur; just as there is no definitive rule that such claims "are always premature while the plaintiff still faces punishment." *See id.*

In *Wiley v. City of Chicago*, 361 F.3d 994, 997 (7th Cir. 2004), where plaintiff alleged that police officers arrested him and prosecuted him on the basis of drugs planted by the arresting officers, the court stated that "any attack on the arrest would necessarily challenge the legality of a prosecution premised on the planted drugs." The *Wiley* court held that "any civil suit against Officer Jones for a false arrest would necessarily imply the invalidity of a potential conviction, and *Heck* requires that Wiley's Fourth Amendment claim would not begin to accrue until the charges were dismissed." *Id.*

In *Howard v. City of Chicago*, where the plaintiff alleged that police officers tortured a confession out of him and coerced and fabricated the testimony of another witness, the Court held that his constitutional claims challenging his coerced confession and failure to intervene necessarily implied the invalidity of his conviction. No. 03 C 8481, 2004 WL 2397281, at *7 (N.D. Ill. Oct. 25, 2004). Thus, the *Howard* court held that the constitutional claims did not

21

accrue until his conviction was overturned. *Id.*

Similar to the facts in *Wiley* and *Howard*, Plaintiffs in this case allege that each were falsely arrested and prosecuted based on the fabricated inculpatory statements that Defendants physically and psychologically tortured out of Bradford and Calvin Ollins and the coerced and fabricated testimony of witnesses Gary Huff, Sam Busch and Anthony Gilty. Due to the particular facts of this case, any challenge of Plaintiffs' arrests or Defendants' use of excessive force during the pre-arraignment seizure would necessarily challenge the legality of the prosecutions premised on the coerced statements. Until their convictions were vacated by Judge Porter on December 4, 2001, Plaintiffs could not file their Fourth Amendment claims, and thus, the instant complaints filed on August 19, 2003 by Ollins and Saunders and on October 10, 2003 by Bradford are timely. The Court therefore denies Defendants' motions to dismiss as to Plaintiffs' Fourth Amendment claims.

## V.    Police Officer Drochner

Defendant Drochner argues that he should be dismissed from these lawsuits because there are no allegations against him in the complaints. However, this Court holds that there are sufficient allegations within the complaint as to Drochner to withstand a motion to dismiss.

Under the federal notice pleading standard, plaintiffs are not required to provide all of the facts of their claims. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Notice pleading merely requires that the plaintiff put the defendant on notice of the claims against him. *Jackson v. Marion County*, 66 F.3d 151, 154 (7th Cir. 1995). Pleading under section 1983 requires only two allegations: (1) that someone denied the plaintiff his federal right; and (2) that the actor was a state actor. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

Both complaints allege these two requirements against Drochner. In the Plaintiffs'

22

complaints, Drochner is described as being part of the interrogation team that allegedly hit and kicked Plaintiff Ollins. (Ollins/Saunders Compl. ¶ 70.) Additionally, Plaintiffs allege Drochner interfered with their due process rights established under *Newsome* and *Brady*. (*Id.* ¶¶ 247, 250, 259, 265; Bradford's Compl. ¶¶ 19, 220, 226.) Drochner is also named in the section 1983 conspiracy count. (Ollins/Saunders Compl. ¶ 273.)

Drochner argues that the allegation that he hit or kicked Ollins is not sufficient to state a due process violation and at most suggests an excessive force claim that is now time-barred. Although this beating is the only specific fact regarding Drochner in the complaint, Plaintiffs need not allege all facts. Not all of the relevant facts are available to the Plaintiffs at the pleading stage. It is reasonable to infer from Plaintiffs' allegations that Drochner was involved in the concealment of exculpatory information. Therefore, Plaintiffs' claims are sufficient under notice pleading and will not be dismissed.

## VI.    Section 1983 Conspiracy

Defendants rest their motion to dismiss the section 1983 conspiracy argument on the hope that all of Plaintiffs' due process claims would be dismissed. However, for the reasons provided above, Plaintiffs' complaints state claims of due process violations.

In addition, Sussman argues that, to the extent Ollins and Saunders allege that she physically coerced them into giving a statement, such claim is time-barred because it does not relate back to Ollins and Saunders' original federal complaint. Sussman, however, fails to cite any case that addresses relation back and fails to argue why Plaintiffs fail to satisfy any of the four factors as required in *Schiavone v. Fortune*, 477 U.S. 21, 30 (1986). "Given our adversarial system of litigation, 'it is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.'" *United States v. Amerson*,

185 F.3d 676, 698 (7th Cir. 1999) (quoting *Doherty v. City of Chi.*, 75 F.3d 318, 324 (7th Cir. 1996)). Therefore, the section 1983 conspiracy claim as it relates to Sussman will not be dismissed on this basis.

Defendant Cook County argues that the conspiracy claims against it are defective because Plaintiffs do not allege that the constitutional violations resulted from any policy, custom, or practice of Cook County. The Court agrees.

"[A] county is liable for depriving an individual's constitutional rights only if the deprivation was the result of the county's official policy, custom, or practice." *Wilson v. Giesen*, 956 F.2d 738, 744 (7th Cir.1992) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978)). Plaintiffs fail to allege that any Cook County policy, custom, or practice caused the deprivation of their constitutional rights. Therefore, the section 1983 conspiracy claim against Cook County is dismissed.

Plaintiffs dedicate one sentence of their brief to the curious argument that Cook County may be held vicariously liable for the conduct of assistant state's attorneys, citing *Robinson v. Sappington*, 351 F.3d 317, 339 (7th Cir. 2003). *Robinson* was an employment discrimination case in which plaintiff sued her employer, a judge and Macon County pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* for hostile work environment. Thus, *Robinson* is inapposite as to section 1983 claims against a municipality.

In sum, the Court grants Defendants' motion to dismiss Plaintiffs' section 1983 conspiracy claim as to Cook County. The Court denies Defendants' motion to dismiss the section 1983 conspiracy claim as to the Police Officer Defendants and Sussman.

## VII.    *Monell* Claim Against the City of Chicago

To state a *Monell* claim against the City of Chicago, Plaintiffs must allege: (1) that they

24

have suffered a deprivation of a constitutionally protected interest, and (2) that the deprivation was caused by an official policy, custom or usage of the municipality. *See Monell*, 436 U.S. at 693-95. The City of Chicago seeks dismissal of this claim based solely on the dismissal of the Plaintiffs' due process claims, arguing that if the due process claims are dismissed, the first element of *Monell* is not satisfied. Because Plaintiffs' complaints state a claim that the Police Officer Defendants violated their due process rights, the City of Chicago's motion to dismiss is denied.

## VIII.  Intentional Infliction of Emotional Distress

Defendants argue that the Plaintiffs' intentional infliction of emotional distress claims are time-barred under the one-year statute of limitations established in the Tort Immunity Act.[5]

Because statute of limitations is an affirmative defense, dismissal under Rule 12(b)(6) is only appropriate if the cause of action is indisputably time-barred. *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003). "Generally, a limitations period begins to run when facts exist that authorize one party to maintain an action against another." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003). However, under a continuing violation theory, "where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 190 (Ill. 2002). "A continuing violation or tort is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation." *Feltmeier*, 798 N.E.2d at 85.

---

[5]Police Officer Defendants do not argue that Plaintiffs' malicious prosecution claims are time-barred.

In the instant case, the alleged facts in Plaintiffs' complaints do not definitively establish that their claims are time-barred. The allegations in the complaints are such that a continuing tort theory may apply, which would place their claims within the statute of limitations period. Plaintiffs allege that Defendants' alleged cover-up of the conspiracy to deprive Plaintiffs' of their constitutional rights as well as the cover-up of the constitutional violations themselves continue to this day, even after Judge Porter vacated their convictions and Governor Ryan pardoned them based on actual innocence, because Defendants continue to cast doubt on Plaintiffs' innocence. Therefore, Defendants' motion to dismiss as to Plaintiffs' claims of intentional infliction of emotional distress is denied.

## IX. Malicious Prosecution

Police Officer Defendants argue that the malicious prosecution claims asserted against them are insufficient because they do not establish a causal connection between their conduct and the prosecution of Plaintiffs by the State's Attorney's Office.

Defendants rely on *Mutual Medical Plans, Inc. v. County of Peoria*, 309 F. Supp. 2d 1067, 1081 (N.D. Ill. 2004), for the proposition that when a prosecutor is aware of the malfeasance of the police, the plaintiff does not have a claim for malicious prosecution. The *Mutual Medical* court held that "Illinois law would not expose an investigator to liability on a malicious prosecution claim where there is no assertion or proof that he in any way misled, deceived, or otherwise concealed facts from a prosecutor who later instituted criminal proceedings and pursued those criminal charges at trial." *Id.* The case was decided on a summary judgment motion and the *Mutual Medical* court noted that the record in the case established that the investigator had disclosed all of the "fruits of his investigation" to the prosecutor. *Id.*

26

To the contrary, the instant case is at the pleading stage, and Plaintiffs allege that the police officers: (1) fabricated confessions, (2) used physical and psychological torture to force Calvin Ollins and Bradford to adopt the fabricated confessions and to relay them to prosecutors and others; and (3) suppressed this and other exculpatory information from the prosecutors. Defendants again argue that other information contained in the complaint implies that the prosecutor was aware of all exculpatory information. However, as discussed above, Plaintiffs are allowed to plead in the alternative, and at this point in the litigation, it would be inappropriate to dismiss the malicious prosecution claims.

Additionally, Defendants' alleged activities go beyond merely effectuating an arrest. Plaintiffs claim that the police officers chose which four suspects would be charged with the crime, although there was no evidence to link them to the crime scene or victim. This rises to the level of initiating proceedings against the Plaintiffs. *See Starling v. Cronin*, No. 98 C 7900, 2000 WL 1036301, at *6 (N.D. Ill. July 21, 2000) (holding malicious prosecution claim was sufficient when plaintiff alleged that the defendants initiated and pursued criminal proceedings against the plaintiff, thereby alleging the defendant officers did more than simply effectuate an arrest). More importantly, the allegations that police officers determined which four suspects would be arrested for the crime shows the Police Officer Defendants' conduct had a causal effect on the initiation and continuation of proceedings against Plaintiffs. *Reed v. City of Chi.*, 77 F.3d 1049, 1053 (7th Cir. 1996) (noting that typically the causal connection between the police officer and the injury is severed by an indictment, but improper influence by police officers or knowing misstatements by officers to prosecutors can overcome that presumption); *Newsome v. James*, 968 F. Supp. 1318, 1324 (N.D. Ill. 1997) (finding officer's conduct "start[ed] the ball rolling" with regard to the prosecution).

Defendants also argue the causal link between the police officer's actions and the

27

Plaintiffs' injuries is broken because the prosecutors filed the charges against Ollins, Saunders and Bradford. However, as discussed above, the police officers are alleged to have chosen which suspects would be presented to the prosecutors and are also alleged to have created the facts in Bradford's confession which provided momentum for the arrest and prosecution of the other Plaintiffs. These allegations are sufficient to establish a cause and effect relationship between the police officers' actions and the injuries suffered by the Plaintiffs.

For these reasons, Plaintiffs' complaints properly state a claim for malicious prosecution. The Court denies Defendants' motion to dismiss in this respect.

### CONCLUSION

For the foregoing reason, the Defendants' motions to dismiss are denied in part and granted in part [doc. nos. 45-1, 46-1, 47-1 in 03 C 5795 (originals), 03 C 7175 (copies)]. The Court grants Defendants' motions to dismiss as to: (1) all claims against Patrick O'Brien, the Office of the Cook County State's Attorney and Pamela Fish, and these parties are hereby terminated; (2) the limited portions of each plaintiff's *Brady* claim based on false accounts of his own interrogation, and such portions are dismissed with prejudice; and (3) Plaintiffs' section 1983 conspiracy claims as to Cook County, and such claims are dismissed without prejudice. In all other respects, the Court denies the motions to dismiss.

**SO ORDERED**                     **ENTERED:**   MAR 2 8 2005

*Ronald A. Guzman*

**HON. RONALD A. GUZMAN**
**United States Judge**

28